# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNIE LOYD, | Case No. 24-cv-1391 (LMP/JFD) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| JASON SCHMITT, *in his individual and official capacities*; and CITY OF MINNEAPOLIS, | |
| Defendant. | |

Patrick Michael Kennedy, **The Law Office of Patrick Kennedy, PLLC, Roseville, MN**; and Richard W. Hechter, **Coleman & Erickson, LLC, Minneapolis, MN**, for Plaintiff.

Adam Edward Szymanski and Heather Passe Robertson, **Minneapolis City Attorney's Office, Minneapolis, MN**, for Defendants.

Plaintiff Minnie Loyd brought this Section 1983 lawsuit against Defendants Jason Schmitt ("Officer Schmitt") and the City of Minneapolis ("the City"), alleging that Defendants violated her Fourth Amendment rights when Officer Schmitt obtained several search warrants related to Loyd. ECF No. 1. Defendants now move for summary judgment on all of Loyd's claims, ECF No. 17, to which Loyd did not provide any response. For the following reasons, Defendants' motion is granted, and the complaint is dismissed with prejudice.

## BACKGROUND

Officer Schmitt is a police officer with the Minneapolis Police Department. ECF No. 19-5 at 3. In 2019, Officer Schmitt was working on an investigation focusing on

1

weapons, violent crime around weapons, and narcotics crimes. *Id.* at 3, 5. In January 2019, Officer Schmitt arrested someone for a drug-related offense and conducted an interview with that person. *Id.* at 7. This person stated that there was a large-scale heroin dealer that was known to this person only as "Stunna." *Id.* The person also stated that Stunna was known to drive a rose-colored Porsche and had a phone number ending in 1225 ("1225 phone"). *Id.* at 8–9. Based on this information, Officer Schmitt searched Facebook for an individual who called himself "Stunna" and found an individual named Kevin Green, who had a prior conviction for a controlled substance crime. *Id.* at 9.

In early February 2019, Officer Schmitt was conducting surveillance on another case when he observed a rose-colored Porsche which was being driven by Green. ECF No. 19-5 at 11–12. When Officer Schmitt ran the registration for the Porsche, he found that it was registered to Loyd. *Id.* at 11. Officer Schmitt then observed Green engage in behavior that was consistent with drug-trafficking activity while driving the Porsche, and he included that information in a search warrant application for a tracker on Loyd's Porsche. *Id.* at 12–13. A state court judge issued a warrant, but the tracker was never installed because Officer Schmitt was unable to locate the Porsche again. *Id.*

On March 6, 2019, Officer Schmitt applied for a search warrant to track the 1225 phone. *Id.* at 14. In drafting a tracking warrant for the phone number, Officer Schmitt used a template developed by the Minnesota Bureau of Criminal Apprehension ("BCA") and the Federal Bureau of Investigation ("FBI"), which contains standardized language and can be adapted to the factual circumstances of the case. *Id.* at 15–16. When using the template for the first warrant for the 1225 phone, Officer Schmitt included the line, "Both the CRI

and CI have provided information in the past that has been reliable, accurate and confirmable," but that information was not accurate.[1]  *Id.* at 47; ECF No. 19-8 at 2.  A state court judge signed the tracking warrant for the 1225 phone on March 6, 2019.  ECF No. 19-8 at 7.  Officer Schmitt applied for an extension to the tracking warrant for the 1225 phone on May 1, 2019.  ECF No. 19-9.  In creating that extension application, Officer Schmitt used the original search warrant and added new information he needed for the extension.  ECF No. 19-5 at 18.  But the extension application still contained the inaccurate information about the CRI and CI having previously provided reliable information.  *Id.* at 47–48.  The extension warrant was granted by a state court judge.  ECF No. 19-9 at 8.

After the extension for the 1225 phone was approved, Officer Schmitt received information identifying an individual named Black, who worked for Green, and also learned of a new phone number ending in 9886 (the "9886 phone") that was potentially associated with criminal activity.  ECF No. 19-5 at 21.  Officer Schmitt decided to draft a warrant for the 9886 phone and used the 1225 phone warrant extension application as a template for the 9886 phone warrant application.  *Id.* at 21–22.  However, because Officer Schmitt had borrowed the earlier search warrant language, the 9886 phone warrant application concededly contained three inaccurate statements: (1) that a confidential informant had identified the 9886 phone as associated with Green; (2) that "a current court order is in place on this cell phone" which "was expiring"; and (3) that the 9886 phone

---

[1]     A "CRI" is a "confidential reliable informant," which is "a distinct type of informant characterized by a proven track record of accurate tips."  *State v. Wiggins*, 4 N.W.3d 138, 149 (Minn. 2024).  A "CI" is a "confidential informant" whose "reliability [is] not vouched for by the affiant."  *State v. Holiday*, 749 N.W.2d 833, 837 (Minn. Ct. App. 2008).

belonged to Loyd and was used to rent a Maserati on June 10, 2019. *Id.* at 50–51. A state court judge signed the warrant for the 9886 phone on June 11, 2019. ECF No. 19-10. The warrants obtained by Officer Schmitt allowed him to obtain historical records of phone numbers associated with calls made or received by the 1225 and 9886 phones and the phones' physical locations. ECF No. 20 ¶ 16. Neither Officer Schmitt nor anyone else involved in the investigation ever obtained or listened to the contents of any phone calls made or received by Loyd. *Id.*

On June 13, 2019, Officer Schmitt applied for and was granted a tracking warrant on an Audi registered to Loyd. *Id.* The tracker was successfully placed on the Audi and was used to monitor its location during the investigation into Green. *Id.* ¶ 15.

Eventually, federal narcotics charges were brought against Green on August 13, 2019. ECF No. 19-1. As part of his federal criminal case, Green moved to suppress all evidence from various searches and seizures conducted during the investigation, including the tracking warrants for the Porsche and Audi, for lack of probable cause, and further moved for a *Franks*[2] hearing alleging that there were false statements in the phone-tracking warrants and the searches of the phones. *See* ECF No. 19-3. Green did not move to suppress the tracking warrants on the Porsche and Audi based on any false statements in those warrants. *See id.*

---

[2]    This refers to *Franks v. Delaware*, 438 U.S. 154, 171 (1978), in which the Supreme Court held that a warrant based on an affidavit containing "deliberate falsehood" or reflecting "reckless disregard for the truth" violates the Fourth Amendment.

A *Franks* hearing was held before United States Magistrate Judge Elizabeth Cowan Wright on May 6, 2021. ECF No. 19-5. At the hearing, Officer Schmitt testified and admitted that the statement in the 1225 phone warrant application about the CRI and CI having previously provided reliable information was inaccurate. *Id.* at 47. Officer Schmitt testified that the statement about the CRI and CI was part of the warrant application template he used, and that he mistakenly forgot to delete that statement when drafting the 1225 phone warrant application. *Id.* at 14–16, 47. Officer Schmitt testified that the warrant extension application for the 1225 phone had the same inaccurate statements because Officer Schmitt used the original warrant application as a template for the warrant extension application. *Id.* at 19, 47–48.

Officer Schmitt also addressed the inaccuracies in the 9886 phone warrant application. As for the inaccurate statement that a confidential informant had identified the 9886 phone as associated with Green, Officer Schmitt explained that he used the 1225 phone warrant extension application as a template for the 9886 phone warrant application. *Id.* at 21–22. To adapt the warrant for the 1225 phone to be a warrant for the 9886 phone, Officer Schmitt used the "find-and-replace-all" feature in Microsoft Word to replace every instance of "1225 phone" with "9886 phone," as the phone number appeared 25 to 30 times in the warrant application. *Id.* at 23–24. That feature worked for most of the warrant application, but it unintentionally changed the statement that a confidential informant had identified the 1225 phone as associated with Green (which was correct) to now say that the confidential informant had identified the 9886 phone as associated with Green (which was not correct). *Id.* at 24–25. Officer Schmitt did not notice that error in the 9886 phone

5

warrant application until the prosecutor in the federal criminal case brought it to his attention much later. *Id.* at 24. Officer Schmitt stated that he did not intend to purposely mislead the state court judge. *Id.*

As for the statement that "a current court order is in place on this cell phone" which "was expiring," Officer Schmitt explained that this statement was accidentally maintained when adapting the 1225 phone warrant extension application to the 9886 phone warrant application. *Id.* at 27. And as for the statements that the 9886 phone belonged to Loyd and was used to rent a Maserati on June 10, 2019, Officer Schmitt explained that it was accurate that the 9886 phone belonged to Loyd. *Id.* at 52. However, at the time Officer Schmitt was drafting the 9886 phone warrant application, he had contacted a car rental agency, which had informed him that the 9886 phone had been used to rent a Maserati on June 10, 2019. *Id.* at 51, 58, 65–66. Officer Schmitt testified that he later learned that the 9886 phone was not actually used to rent a Maserati. *Id.* at 51, 58–59, 65–66.

Finally, Green's counsel questioned Officer Schmitt about a statement made in the 9886 phone warrant application: that Green "is rarely observed without Loyd being present." ECF No. 19-10 at 4. Green's counsel asked if Loyd was present with Green during a traffic stop on April 19, 2019. ECF No. 19-5 at 53–54. Officer Schmitt stated that he could not remember but that the 9886 phone warrant application did not indicate that Loyd was with Green when he was stopped on April 19, 2019. *Id.*

After the *Franks* hearing, Magistrate Judge Wright issued an order largely recommending denial of Green's motions to suppress. ECF No. 19-11. As for the Porsche warrant, Magistrate Judge Wright denied the motion to suppress as moot to the extent that

6

Green sought suppression of evidence obtained from the Porsche warrant, given that the warrant was never executed. *Id.* at 10. However, Magistrate Judge Wright granted the motion to suppress the existence of the Porsche warrant itself as evidence, not because the warrant contained any inaccuracies, but because information in the warrant was stale. *Id.* at 10–11. Magistrate Judge Wright also denied suppression of evidence from the 1225 phone warrant. *Id.* at 11–17. The order did not describe any inaccuracies in the 1225 phone warrant; rather, the analysis focused on whether information in the 1225 phone warrant was stale, and Magistrate Judge Wright found it was not.[3] *Id.* at 14–17. As for the 9886 phone warrant, Magistrate Judge Wright concluded that even when all of the admitted inaccuracies were removed from the warrant, probable cause still existed to seek the 9886 phone warrant. *Id.* at 18–22. Finally, Magistrate Judge Wright concluded that the Audi warrant was supported by probable cause but did not note any inaccuracies in that warrant. *Id.* at 50–54. Magistrate Judge Wright's order was largely adopted by the presiding district judge.[4] *See* ECF No. 19-12. Ultimately, Green was found guilty of narcotics offenses and was sentenced to 180 months in prison. ECF No. 19-13.

---

[3]     Magistrate Judge Wright did not engage in a separate analysis of the 1225 phone extension warrant but denied any motion to suppress that warrant. ECF No. 19-11 at 59.

[4]     The district judge did not adopt Magistrate Judge Wright's conclusions regarding the 9886 phone warrant because the Government indicated that it did not intend to offer evidence obtained from that warrant in Green's prosecution. ECF No. 19-12 at 2. Accordingly, the district judge denied the motion to suppress evidence from the 9886 phone warrant as moot. *Id.*

On April 17, 2024, Loyd brought this Section 1983 lawsuit against Officer Schmitt in his individual and official capacities, alleging that the warrant applications "ma[de] falsehoods" and violated Loyd's Fourth Amendment rights. *Id.* ¶¶ 18–34. Loyd also brought a *Monell*[5] claim against the City.[6] Loyd seeks monetary damages, a declaration that Defendants' conduct "violate[s] the Fourth Amendment to the U.S. Constitution and constitute[s] unreasonable search and seizure in violation of Minnesota state law and Federal Law," and injunctive relief to "ensure and compel law enforcement officers in the [City] to take proper training and to ensure the agencies who employ these [law enforcement officers] instruct properly on the applications and affidavits for warrants." *Id.* ¶¶ 44, 47; *id.* at 12.

Since filing the complaint, Loyd and her counsel have largely abandoned this case. Loyd failed to provide initial disclosures (as required by Federal Rule of Civil Procedure 26(a)(1)), nor did Loyd request any discovery. ECF No. 19 ¶ 1. On September 18, 2025, Defendants moved for summary judgment on all of Loyd's claims. ECF No. 17. Loyd failed timely to respond to Defendants' summary-judgment motion, so the Court issued an order directing Loyd to show cause within seven days as to why Defendants' motion should not be taken under advisement on Defendants' briefing alone. ECF No. 22. Loyd did not

---

[5]   *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

[6]   This title of this section of Loyd's complaint references 42 U.S.C. § 1981, but the rest of the allegations describe municipal liability under 42 U.S.C. § 1983. Those are different claims. Given that the substantive allegations in Count II describe a municipal liability claim under Section 1983, the Court construes Count II of Loyd's complaint to raise a *Monell* claim against the City.

respond to the show-cause order, so the Court took Defendants' motion under advisement. ECF No. 23. To date, the Court has not received any response from Loyd.

## ANALYSIS

Summary judgment is proper only if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Riedl v. Gen. Am. Life Ins*., 248 F.3d 753, 756 (8th Cir. 2001) (citation omitted) (internal quotation marks omitted). At this procedural juncture, the Court does "not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (citation omitted) (internal quotation marks omitted). If a party fails to properly address another party's assertion of fact, the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## I.    Loyd Lacks Standing To Pursue Injunctive and Declaratory Relief

Defendants first assert that Loyd lacks standing to pursue injunctive and declaratory relief. ECF No. 18 at 22–23. "An injunction is inherently prospective and cannot redress past injuries." *Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019). Declaratory relief, too, must be "prospective," for the purpose of a declaratory judgment is "to define the legal rights and obligations of the parties in anticipation of *some future conduct*, not simply to proclaim liability for a past act." *Just. Network Inc. v. Craighead County*, 931 F.3d 753, 764 (8th Cir. 2019). Accordingly, when a plaintiff seeks declaratory and injunctive relief, "past injuries alone are insufficient to establish standing. Rather, [the plaintiff] must show

9

[s]he is suffering an ongoing injury or faces an immediate threat of injury." *Frost*, 920 F.3d at 1162 (citation omitted) (alteration in original); *see also Harmon v. City of Kansas City*, 197 F.3d 321, 327 (8th Cir. 1999) ("The mere fact that injurious activity took place in the past does nothing to convey standing to seek injunctive relief against future constitutional violations.").

There is no evidence in the record that Loyd is suffering an ongoing injury related to the allegedly false search warrants. Rather, the tracking of Loyd's cars and cell phones occurred in 2019 in a criminal investigation of Green—an investigation which concluded several years ago and culminated in Green's conviction and imprisonment. *See* ECF No. 19-6 (Minneapolis Police Department investigative file from 2019); ECF No. 19-13 (Green's sentencing judgment). Indeed, the complaint's use of past tense to describe Loyd's alleged injuries confirms that Loyd's injuries are not ongoing or impending. *See, e.g.*, ECF No. 1 ¶ 2 (alleging that Loyd "*was* the victim of a violation of her Fourth Amendment" rights); *id.* ¶ 28 (alleging that "Defendants *violated* clearly established City and Police policies"); *id.* ¶ 33 (alleging that Loyd "*suffered* Constitutional violations"). Loyd's allegations of past unconstitutional searches are insufficient to confer standing to pursue prospective injunctive and declaratory relief. *See Smook v. Minnehaha County*, 457 F.3d 806, 815–16 (8th Cir. 2006) (holding that juveniles subjected to strip searches lacked standing to pursue injunctive relief on a Fourth Amendment claim because the "allegations of the complaint relate entirely to past conduct by the defendants"). And to the extent that Loyd seeks injunctive and declaratory relief to remedy the purported injuries of other parties not before the Court, *see* ECF No. 1 at 12, Loyd lacks standing to seek that relief,

10

*see Warth v. Seldin*, 422 U.S. 490, 499 (1975) (explaining that a plaintiff "generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties"). Loyd's requests for injunctive and declaratory relief are therefore dismissed.

## II.   Summary Judgment Is Warranted on the Section 1983 Claim Against Officer Schmitt In His Individual Capacity

Turning to Loyd's Section 1983 claim against Officer Schmitt, although the complaint is not entirely clear, the essence of Loyd's claim appears to be that Officer Schmitt violated her Fourth Amendment rights by including false information in the search warrants for the 1225 phone, the 9886 phone, the Porsche, and the Audi. ECF No. 1 ¶¶ 18–34.

"A warrant based upon an affidavit containing deliberate falsehood or reckless disregard for the truth violates the Fourth Amendment and subjects the police officer to § 1983 liability." *Morris v. Lanpher*, 563 F.3d 399, 402 (8th Cir. 2009) (citation omitted) (internal quotation marks omitted). However, an "innocent mistake or negligence will not suffice to demonstrate reckless or deliberate falsehood." *Estate of Nash v. Folsom*, 92 F.4th 746, 754 (8th Cir. 2024) (citation omitted) (internal quotation marks omitted). And even if a warrant application contains deliberate falsehoods or reckless disregard for the truth, a violation of the Fourth Amendment does not occur unless "the affidavit's remaining content

11

is insufficient to establish probable cause." *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001).

Here, summary judgment is warranted on Loyd's Section 1983 claim against Officer Schmitt in his individual capacity because there is no genuine dispute that: (1) the inaccuracies in the warrant applications for the 1225 and 9886 phones were the result of innocent mistakes or negligence; (2) no search occurred with respect to the Porsche; and (3) there were no inaccuracies in the warrant application for the Audi.

### a.      1225 Phone Warrants

As a threshold matter, Defendants note, and the Court agrees, that there is no evidence in the record suggesting that the 1225 phone belonged to Loyd. ECF No. 18 at 24–25. The record suggests that the 1225 phone belonged to and was used by Green. ECF No. 19-6 at 20–21. Without any contrary evidence, that would tend to undermine a claim that Loyd had a reasonable expectation of privacy in the 1225 phone. *See United States v. Turner*, 781 F.3d 374, 382 (8th Cir. 2015) (citation omitted) ("With regard to the content of cell phones, an accused must first establish that [s]he personally has a legitimate expectation of privacy in the object that was searched." (internal quotation marks omitted)).

The result would not change even if the Court assumed for argument's sake that Loyd had a reasonable expectation of privacy in the 1225 phone. Defendants accept that the statement "[b]oth the CRI and CI have provided information in the past that has been reliable, accurate and confirmable" in the 1225 phone warrant application and warrant extension application was inaccurate. ECF No. 19-5 at 47–48. However, the evidence in the record discloses that Officer Schmitt mistakenly included that statement as a holdover

12

from a warrant application template that he used when drafting the 1225 phone warrant application. *Id.* at 14–16, 47. These templates are developed by the BCA and the FBI. *Id.* at 15–16. Officer Schmitt further explained that the warrant extension application for the 1225 phone had the same inaccurate statement because Officer Schmitt used the original warrant application as a template for the warrant extension application. *Id.* at 19, 47–48. Officer Schmitt described his process of reviewing and proofreading warrant applications, and he testified at Green's *Franks* hearing that the inaccuracies stemmed from not "putting as key of an eye onto it as I should have." *Id.* at 16, 57.

Crediting this evidence—as the Court must, given that there is no competing evidence in the record, *see* Fed. R. Civ. P. 56(e)—Officer Schmitt's oversight in including this statement from the warrant application template regularly used by law enforcement rises only to the level of an "innocent mistake or negligence," which does not establish a violation of the Fourth Amendment. *Nash*, 92 F.4th at 754; *see United States v. O'Neill*, 94 F.4th 531, 538–39 (6th Cir. 2024) (finding no *Franks* violation when an officer "copied and pasted [inaccurate] material from a template affidavit and mistakenly forgot to delete it"); *United States v. McKnight*, CR18-16 TSZ, 2019 WL 998416, at *8 (W.D. Wash. Mar. 1, 2019) (finding no *Franks* violation when officer made "innocent" mistake by using "a 'copy and paste' method for later affidavits that propagated the error in his affidavit").

### b. 9886 Phone Warrant

Loyd's complaint challenges four purportedly inaccurate statements in the 9886 phone warrant application: (1) that a confidential informant had identified the 9886 phone as associated with Green; (2) that "a current court order is in place on this cell phone"

which "was expiring"; (3) that the 9886 phone belonged to Loyd and was used to rent a Maserati on June 10, 2019; and (4) that Green "is rarely observed without Loyd being present." ECF No. 1 ¶ 17. Loyd's Fourth Amendment claim based on the 9886 phone warrant must be dismissed because she does not demonstrate how the first three statements were anything other than the product of an innocent mistake or negligence, and she fails to show that the fourth statement was inaccurate at all.

As for the statement that a confidential informant had identified the 9886 phone as associated with Green, Officer Schmitt explained that he used the 1225 phone warrant extension application as a template for the 9886 phone warrant application. ECF No. 19-5 at 21–22. To adapt the warrant for the 1225 phone to be a warrant for the 9886 phone, Officer Schmitt used the "find-and-replace-all" feature in Microsoft Word to replace every instance of "1225 phone" with "9886 phone," as the phone number appeared 25 to 30 times in the warrant application. *Id.* at 23–24. That feature unintentionally changed the statement that a confidential informant had identified the 1225 phone as associated with Green (which was correct) to instead say that the confidential informant had identified the 9886 phone as associated with Green (which was not correct). *Id.* at 24–25. Officer Schmitt did not include that statement to mislead the state court judge, and he did not even notice that error in the 9886 phone warrant application until the prosecutor in the federal criminal case brought it to his attention much later. *Id.* at 24. On this record, Officer Schmitt's use of the "find-and-replace-all" function demonstrated, at most, negligence in drafting the 9886 phone warrant application, particularly because Officer Schmitt entertained no serious doubts regarding the veracity of the statements contained in the warrant application when

14

he submitted it.  *Id.*; *see United States v. Lowe*,  516 F.3d 580, 585 (7th Cir. 2008) (finding no *Franks* violation with similar "find-and-replace" errors because "at worst," the investigator "was simply negligent and should have read the affidavit more carefully").

As for the statement that "a current court order is in place on this cell phone" which "was expiring," Officer Schmitt acknowledged that this statement was an inadvertent holdover from the 1225 phone warrant extension application, which was adapted for the 9886 phone warrant application.  ECF No. 19-5 at 21–22, 27.  Again, in the absence of any evidence contradicting Officer Schmitt's *Franks* hearing testimony, there is no genuine dispute that this inaccuracy rises only to the level of an innocent mistake or negligence. *See McKnight*, 2019 WL 998416, at *8.

As for the statement that the 9886 phone belonged to Loyd and was used to rent a Maserati on June 10, 2019, Officer Schmitt explained that he believed that statement was true when he wrote it because a car rental agency had informed him that the 9886 phone had been used to rent a Maserati on June 10, 2019.  ECF No. 19-5 at 51, 58, 65–66.  Only later did Officer Schmitt learn that the 9886 phone was not actually used to rent a Maserati. *Id.* at 51, 58–59, 65–66.  A statement in an affidavit must be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."  *Franks*, 438 U.S. at 165.  "This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct."  *Id.*  A fact is "appropriately accepted" if the affiant had a "reasonable basis for [his] conclusion."  *United States v. Schmitz*, 181 F.3d 981, 986 (8th Cir. 1999).  Here, there is no dispute that Officer Schmitt had a reasonable basis for writing that the 9886 phone had been used to rent a Maserati on June 10, 2019, given that

15

he was told that information by the car rental agency. The fact that the information ultimately turned out to be inaccurate does not mean that a "false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit." *Reinholz*, 245 F.3d at 774.

Finally, Loyd has not demonstrated that the statement that Green "is rarely observed without Loyd being present" is even false. In her complaint, Loyd pointed to the fact that Loyd was not present with Green at a traffic stop on April 19, 2019. ECF No. 1 ¶ 17.l; ECF No. 19-5 at 53–54. But the fact that Loyd was not present with Green for a single traffic stop does not render untrue the observation that Green is *rarely* observed without Loyd. Because there is nothing in the record to suggest that this statement was false, it cannot premise a *Franks* violation. *Reinholz*, 245 F.3d at 774 (explaining that a *Franks* violation requires proving a "false statement").

Regardless, even if a warrant application contains deliberate falsehoods, a violation of the Fourth Amendment does not occur unless "the affidavit's remaining content is insufficient to establish probable cause." *Id.* Magistrate Judge Wright addressed this very issue in the *Franks* proceedings during Green's prosecution: she concluded that, even removing the inaccuracies in the 9886 phone warrant application, the warrant was still supported by probable cause. ECF No. 19-11 at 18–22. Loyd has offered no evidence or argument to counter Magistrate Judge Wright's thorough consideration of this issue. Accordingly, there is no genuine dispute that any Fourth Amendment violation occurred with the issuance of the 9886 phone warrant for the independent reason that it was

16

supported by probable cause beyond the inaccuracies identified by Loyd. *Reinholz*, 245 F.3d at 774.

### c.      Porsche Warrant

Loyd's Fourth Amendment claim based on the tracking warrant sought for the Porsche fails for the simple reason that the warrant was never executed, and a search never took place. The Fourth Amendment "protects persons against unreasonable searches and seizures." *United States v. Stephen*, 984 F.3d 625, 629 (8th Cir. 2021) (citation omitted). But here, it is undisputed that the warrant for the Porsche was never executed and that a tracker was never placed on the Porsche. ECF No. 19-5 at 11–13. Loyd's complaint correctly notes that the "Government's attachment of [a] GPS device to [a] vehicle, and its use of that device to monitor the vehicle's movements constitutes a search under the Fourth Amendment." ECF No. 1 ¶ 22 (citing *United States v. Jones*, 565 U.S. 400 (2012)). But here, it is undisputed that the government never attached a GPS device to the Porsche, so a "search" of that vehicle never occurred. Accordingly, absent a "search," Loyd cannot demonstrate how her Fourth Amendment rights have been injured by issuance of the Porsche warrant. *See Stewart v. City of Red Wing*, 554 F. Supp. 2d 924, 929 (D. Minn. 2008) (finding plaintiffs lacked standing to bring Fourth Amendment claim because their property was not actually searched); *Lane v. District of Columbia*, 211 F. Supp. 3d 150, 177 (D.D.C. 2016) (rejecting the argument that issuance of a warrant with inaccuracies alone states a Fourth Amendment violation because the "Fourth Amendment protects against unreasonable searches and seizures, not against unreasonable warrants," and explaining that plaintiffs "would have no cause of action if the [police] had never executed

17

the warrant"). Loyd's Section 1983 claim based on the Porsche warrant is therefore dismissed.

### d. Audi Warrant

Loyd's Fourth Amendment claim based on the tracking warrant sought for the Audi must be dismissed because she has not demonstrated that the warrant for the Audi contained any false statements. The inaccuracies alleged in Loyd's complaint, ECF No. 1 ¶ 17, and discussed above do not appear in the warrant application for the Audi. *See* ECF No. 19-7. Indeed, in his criminal proceedings, Green never argued that the warrant application for the Audi contained false statements; rather, he argued that the information in the warrant application did not sufficiently tie him to Loyd, the Audi, and drug dealing. ECF No. 19-11 at 50–54. Absent a false statement in the warrant application for the Audi, Loyd cannot succeed on her Fourth Amendment claim based on *Franks*. *Reinholz*, 245 F.3d at 774.

Because Loyd does not raise a genuine dispute of material fact as to whether Officer Schmitt deliberately or recklessly made false statements to demonstrate probable cause for the warrants she challenges, Loyd's Section 1983 claim against Officer Schmitt in his individual capacity is dismissed.

### III. Summary Judgment Is Warranted on the *Monell* Claim Against the City

Loyd also brings a Section 1983 claim against the City.[7] Under *Monell*, a municipality cannot be held liable for a constitutional violation under Section 1983 solely

---

[7] Loyd also brings a Section 1983 claim for damages against Officer Schmitt in his official capacity, ECF No. 1 ¶ 2, but a Section 1983 claim for damages against a municipal officer in their official capacity is really "an action directly against the public entity itself."

because it employs a tortfeasor. *See Monell*, 436 U.S. at 691. Rather, liability for a constitutional violation will attach to a municipality only if the violation resulted from: (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise an official or employee. *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016). However, "for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007) (citation omitted). Because the Court has dismissed all of Loyd's individual claims against Officer Schmitt, the Court must likewise dismiss the *Monell* claim against the City. *See id.*; *Stearns v. Wagner*, 122 F.4th 699, 704 (8th Cir. 2024) ("Because [plaintiff's] constitutional rights were not violated, his *Monell* claim fails.").

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (ECF No. 17) is **GRANTED**; and

2. Loyd's complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 17, 2026                    *s/Laura M. Provinzino*
                                            Laura M. Provinzino
                                            United States District Judge

---

*See Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1003 (D. Minn. 2016) (quoting *Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994)). Accordingly, such claims are analyzed under the *Monell* framework. *See Lopez-Buric v. Notch*, 168 F. Supp. 2d 1046, 1049 (D. Minn. 2001).